**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HIGH TEK USA, INC.,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>HEAT AND CONTROL, INC. and DOES 1 through 50, inclusive,<br><br>　　　　Defendants. | Case No.: 12-CV-00805 YGR<br><br>**NOTICE OF TENTATIVE RULING ON MOTION OF DEFENDANT HEAT AND CONTROL, INC. TO DISMISS, PARTIALLY GRANTING MOTION WITH LEAVE TO AMEND** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING TENTATIVE RULING ON THE MOTION TO DISMISS SCHEDULED FOR HEARING ON JULY 19, 2012 AT 2:00 P.M.

　　The Court has reviewed the parties' papers and is inclined to partially grant the motion to dismiss with leave to amend. This is a *tentative* ruling and the parties still have an opportunity to present oral argument. Alternatively, if the parties **JOINTLY** stipulate in writing to entry of the tentative ruling, the hearing shall be taken off calendar, and the tentative ruling shall become the Order of the Court. Otherwise, the hearing shall be continued to June 26, 2012 at 2:00 p.m.

　　The Court *TENTATIVELY* **GRANTS IN PART** and **DENIES IN PART** the Motion of Defendant Heat and Control, Inc. to Dismiss the Complaint **WITH LEAVE TO AMEND** as follows:

## I.　BACKGROUND

　　This case involves access to replacement parts for processing, packaging, and weighing equipment used in food production. The Complaint alleges that Defendant Heat and Control, Inc.

("H&C") is the exclusive North America distributor of scales, equipment and parts manufactured by Ishida Co., Ltd. ("Ishida").  Complaint ¶ 8.  Plaintiff High Tek USA, Inc. ("High Tek") alleges that its inability to purchase Ishida parts from H&C violates federal antitrust and California unfair competition laws.

High Tek alleges seven causes of action:  violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2 (Counts I and II); price discrimination under the Robinson-Patman Act, 15 U.S.C. § 13 (Count III); and state law claims for Intentional Interference with Contractual Relations (Count IV); Intentional Interference with Prospective Economic Advantage (Count V); Promissory Estoppel (Count VI); and violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. (Count VII).  H&C has moved to dismiss on the grounds that this is a garden-variety business dispute between a parts supplier and its former customer, which the antitrust laws do not reach.

## II.     LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  In the antitrust context, "a court must determine whether an antitrust claim is 'plausible' in light of basic economic principles." *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009) (citing *Twombly*, *supra*, 550 U.S. at 556).  If the allegations in the complaint fail to give rise to a plausible claim for relief, "'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Twombly*, *supra*, 550 U.S. at 558 (citations omitted).

## III.    ANALYSIS

### A.    SECTION 1 SHERMAN ACT – CONTRACT IN RESTRAINT OF TRADE

As to Count I, alleging a violation of Section 1 of the Sherman Act, High Tek fails to allege sufficiently each of the required elements of the claim.  Section 1 of the Sherman Act forbids contracts in restraint of trade.[1]  To state a Section 1 Sherman Act claim, the plaintiff must plead not

---

[1] 15 U.S.C. § 1. Trusts, etc., in restraint of trade illegal; penalty
>   Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony ...

2

just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce; (3) which actually injures competition. *Twombly*, *supra*, 550 U.S. at 548.

Here, the Complaint identifies H&C's contract with Ishida, which makes H&C the exclusive North America distributor of Ishida parts, but does not allege that either H&C or Ishida entered into the contract for the purpose of harming or restraining commerce. Moreover, as to the third element, the Complaint alleges only the ultimate fact that "the [unspecified] way [H&C] executes those contracts in North America unreasonably restrains trade" without providing any evidentiary fact of injury to competition.

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count I **WITH LEAVE TO AMEND**.

### B.   SECTION 2 SHERMAN ACT – ILLEGAL MONOPOLY

As to Count II, alleging a violation of Section 2 of the Sherman Act, Plaintiff fails to plead facts regarding the relevant product market. Section 2 of the Sherman Act makes it unlawful to monopolize, attempt to monopolize, or combine or conspire to monopolize.[2] To state a cause of action for the offense of monopoly under Section 2 of the Sherman Act, a plaintiff must plead three elements: (1) the relevant market that defendant has monopolized; (2) possession of monopoly power in that market; and (3) willful acquisition or maintenance of that power through competitively unreasonable means, rather than as a consequence of a superior product, business acumen, or historic accident. *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).

Charges of monopolization can only be judged in the framework of the relevant market, which has two dimensions: the "relevant geographic market" and the "relevant product market." While the parties agree that the relevant geographic market is the United States, they differ on the scope of the "relevant product market." In the Complaint, High Tek alleges that the relevant product market is the

---

[2] 15 U.S.C. § 2. Monopolizing trade a felony; penalty
  Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony ...

purchase of Ishida parts. Complaint ¶ 29. In its Opposition Brief, High Tek adds two additional relevant markets: the aftermarket for refurbished Ishida scales and the aftermarket for servicing Ishida scales. H&C argues that the relevant product market is all food processing scales sold in the United States.

High Tek alleges no facts from which it plausibly could be inferred that the relevant product market is the purchase of Ishida parts (the aftermarket for refurbished Ishida scales and/or the aftermarket for servicing Ishida scales)[3] as opposed to all food processing scales sold in the United States. *See Brown Shoe Co. v. United States*, 370 U.S. 294, 325-26 (1962) ("The outer boundaries of a product market are determined by the reasonable interchangeability of use . . . between the product itself and the substitutes for it."); *see also Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 180 (2006) ("Interbrand competition, our opinions affirm, is the 'primary concern of antitrust law.'"). This infirmity is fatal to its section 1 Sherman Act claim. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956) ("where there are market alternatives that buyers may readily use for their purposes, illegal monopoly does not exist.").

Because High Tek has failed to show a relevant market against which H&C's market power and the anticompetitive effects of its practices can be judged,[4] High Tek has failed to state a Section 2 Sherman Act claim.

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count II **WITH LEAVE TO AMEND**.

---

[3] In its Opposition Brief, High Tek attempts to explain why it believes that Ishida parts is the relevant market. For example, it argues that Ishida equipment is the "premium brand," the "gold standard" of weighing and packaging equipment, that Ishida equipment is utilized by a majority of manufacturers and distributors of packaging equipment. Facts not alleged in the Complaint will not prevent dismissal for failure to state a claim. Without deciding whether the additional facts are sufficient to state a Section 2 Sherman Act claim, the Court will permit High Tek to amend its Complaint to allege additional facts.

[4] The term "monopolize," as used in the federal antitrust laws, means the power either to obtain, or to maintain, the power to remove or exclude competitors from the field of competition in a particular business or industry. Since H&C is the exclusive distributor of Ishida parts, H&C maintains its so-called monopoly power to purchase Ishida parts because of H&C's contract with Ishida to be the exclusive North American distributor for Ishida parts, not because of any of the alleged anticompetitive behavior. Additionally, High Tek's theory, that because it is a competitor that has been harmed, that H&C has harmed competition does not state a claim under the antitrust laws. "[T]he plaintiff here must allege and prove harm, not just to a single competitor, but to the competitive process, *i.e.*, to competition itself." *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998).

C. **ROBINSON-PATMAN ACT CLAIM – PRICE DISCRIMINATION**

As to Count III for violation of the Robinson-Patman Act, High Tek fails to allege each of the required elements of the claim. The Robinson-Patman Act of 1936, 15 U.S.C. § 13, forbids price discrimination when it is apt to have an anticompetitive effect. To state a claim for a violation of Section 2(a) of the Robinson-Patman Act, a plaintiff must plead four elements: (1) the relevant sales were made in interstate commerce; (2) the products sold were of the same grade and quality; (3) that H&C discriminated in price as between High Tek and another purchaser; and (4) the discrimination had a prohibited effect on competition. *See Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 556 (1990).

The Complaint alleges that H&C required High Tek to pay a 10-20% markup on all Ishida parts – something other companies who were not in direct competition with H&C were not required to pay. Complaint ¶ 15. Thus, High Tek alleges that it was *not* in competition with the purchasers who were allegedly the beneficiaries of the price discrimination. As such, High Tek has failed to state a claim for price discrimination under the Robinson-Patman Act.

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count III **WITH LEAVE TO AMEND**.

D. **INTENTIONAL INTERFERENCE**

As to Counts IV and V for intentional interference with contractual relations and intentional interference with prospective economic advantage, H&C attacks the merits of the claim but does not address the sufficiency of the allegations in the Complaint. The elements for a cause of action for intentional interference with contractual relations and intentional interference with prospective economic advantage essentially are: (1) a contract or other economic relationship between plaintiff and a third party; (2) the defendant's knowledge of the contract or relationship; (3) defendant's intentional acts designed to induce a breach or disrupt the contract or relationship; (4) actual breach or disruption; and (5) damage. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (Cal. 2003); *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (Cal. 1998).

High Tek alleges that its inability to purchase Ishida parts has halted the company's ability to conduct business. Complaint ¶ 20. H&C argues that its decision not to sell High Tek Ishida parts was justified and was not wrongful. Whether H&C's actions were justified or privileged is an evidentiary

issue (for which H&C will have the burden of proof), not a pleading issue. As such, H&C has failed to identify a pleading defect in High Tek's intentional interference claims.

The Court **DENIES** the Motion to Dismiss Counts IV and V on this basis.

### E. PROMISSORY ESTOPPEL

As to Count VI, High Tek fails to state a claim for promissory estoppel because the Complaint alleges that H&C performed the very promise the High Tek seeks to enforce. The elements for a claim of promissory estoppel are: "'(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.'" *People v. Castillo*, 49 Cal. 4th 145, 156 n.10 (Cal. 2010) (quoting *City of Goleta v. Superior Court*, 40 Cal. 4th 270, 279 (Cal. 2006)). If the promise sought to be enforced was performed, then the doctrine is inapplicable. *Money Store Inv. Corp. v. S. California Bank*, 98 Cal. App. 4th 722, 732 (Cal. Ct. App. 2002) ("A cause of action for promissory estoppel would be superfluous"). Moreover, because promissory estoppel is an equitable doctrine that provides a substitute for consideration to enforce a promise, if the only claimed reliance is performance of the act bargained for, the doctrine is inapplicable. *See Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 275 (Cal. Ct. App. 2011).

The Complaint alleges that prior to entering into a parts account, H&C required that High Tek remove language from its catalog that stated something to the effect of "High Tek is the best in the industry." Complaint ¶ 14. High Tek alleges that it detrimentally relied upon a promise of a long-term parts account, and made the requested change to its catalog. H&C provided High Tek with a parts account to purchase Ishida parts from early 2007 until December 20, 2011. *Id.* ¶¶ 14-16.

Either adequate consideration was given here, *i.e.*, H&C promised a long-term parts account if High Tek removed certain language from its catalog, or it was rendered moot by H&C's performance of its obligations under the agreement, *i.e.*, H&C granted High Tek a parts account and provided High Tek Ishida parts for four over years. To the extent that High Tek believes that it was entitled to a longer term contract, under California law, any agreement not to be performed within a year must be reduced to writing to be valid. *See* Cal. Civ. Code § 1624(a)(1) (statute of frauds).

Based on the foregoing analysis, High Tek has failed to state a claim for promissory estoppel.

### F.   CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 *et seq.*

As to Count VII, for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code. § 17200, High Tek claims are based upon its federal antitrust claims.  California's UCL statute prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. Prof. Code. § 17200; *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999).  With respect to Plaintiff's allegations under the unfair prong of the UCL, because High Tek simply borrows from its federal antitrust claims, and because High Tek has failed to adequately plead its antitrust claims, its UCL claim necessarily fails as well.  *See Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (Cal. Ct. App. 2005).

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count VII **WITH LEAVE TO AMEND**.

### IV.   CONCLUSION

Therefore, the Court *tentatively* Orders the following:

1) Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.**

2) Counts I, II, III, VI, and VII are **DISMISSED WITH LEAVE TO AMEND**.

3) Plaintiff shall have until July 16, 2012 to file an amended complaint.

No later than **2:00 p.m.** on **Friday, June 15, 2012**, the parties may **JOINTLY** stipulate in writing to entry of this tentative ruling.   If the parties so stipulate, then the hearing shall be taken off calendar, and the tentative ruling shall become the Order of the Court.  Otherwise, the hearing will take place on Tuesday, June 26, 2012 at 2:00 p.m.

**IT IS SO ORDERED**.

Date: June 11, 2012

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE