**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **HIGH TEK USA, INC.,**<br><br>　　　　**Plaintiff,**<br><br>　　vs.<br><br>**HEAT AND CONTROL, INC. and DOES 1 through 50, inclusive,**<br><br>　　　　**Defendants.** | **Case No.: 12-CV-00805 YGR**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION OF DEFENDANT HEAT AND CONTROL, INC. TO DISMISS THE COMPLAINT WITH LEAVE TO AMEND** |

Plaintiff High Tek USA, Inc. ("High Tek") brings this antitrust action against Defendant Heat and Control, Inc. ("H&C") alleging unilateral refusal to deal in the aftermarket for packaging and weighing equipment of food packaging and processing materials. Plaintiff alleges seven causes of action: (1) Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (2) Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; (3) Violation of the Robinson-Patman Act, 15 U.S.C. § 13; and state law claims for (4) Intentional Interference with Contractual Relations; (5) Intentional Interference with Prospective Economic Advantage; (6) Promissory Estoppel; and (7) Unfair, Unlawful and Fraudulent Business Practices in Violation of California Business and Professions Code § 17200 *et seq*.

Defendant has filed a Motion to Dismiss the Complaint on the grounds that this is a garden variety business dispute between a supplier and its former customer that does not implicate federal antitrust law. The Court held oral argument on July 13, 2012.

Having carefully considered the papers submitted, the Complaint, and the argument of counsel, for the reasons set forth below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss **WITH LEAVE TO AMEND**.

## I.  BACKGROUND

This case involves access to replacement parts for processing, packaging, and weighing equipment used in food production.  The equipment is used to weigh and fill bags, pouches, cans, jars, cartons, cases and trays with a variety of fresh, processed, and frozen foods.  H&C is the exclusive North America distributor of scales, equipment and parts manufactured by Ishida Co., Ltd. ("Ishida").  Dkt. No. 1 ("Complaint") ¶ 8.  H&C also manufactures food processing and packaging equipment.  *Id.*  High Tek alleges that its inability to purchase Ishida parts from H&C violates federal antitrust and California state laws.

In 2004, High Tek was founded by two former H&C employees who began servicing food processing and packaging equipment, including scales manufactured by Ishida.  *Id.* ¶ 9.  In addition to servicing Ishida scales, High Tek sells used scales which it has refurbished and reconditioned.  *Id.* ¶ 11.  High Tek alleges that its sale of refurbished and reconditioned scales directly competes with H&C's sale of new scales.  *Id.*  In order to refurbish, recondition, and service Ishida scales, High Tek must purchase Ishida parts from H&C.  *Id.* ¶ 12.

Beginning in early 2007, and continuing until December 20, 2011, H&C provided High Tek with a parts account to purchase Ishida parts.  *Id.* ¶¶ 14-16.  H&C required High Tek to pay a 10-20% markup on all Ishida parts, which is something that other companies who were not in direct competition with H&C were not required to pay.  *Id.* ¶ 15.  Prior to entering into the parts account, H&C required that High Tek remove language from its catalog that stated something to the effect of "High Tek is the best in the industry."  *Id.* ¶ 14.  High Tek alleges that it detrimentally relied upon the promise of a long-term parts account and made the requested changes to its catalog.  *Id.*

High Tek alleges that on December 20, 2011, soon after H&C and High Tek held tables near each other at an industry trade show, H&C eliminated High Tek's parts accounts without explanation.  *Id.* ¶ 16.  High Tek then attempted to purchase Ishida parts from Ishida distributors outside of North America and even from Ishida directly, but they all told High Tek that parts could only be purchased in North America from H&C.  *Id.* ¶¶ 17-18.  High Tek also attempted to purchase parts from third-parties who had initially purchased parts from H&C but H&C thwarted such efforts by threatening the third-parties that they will lose their parts accounts with H&C if they resell parts to High Tek.

High Tek's inability to purchase Ishida parts has halted the company's ability to conduct business.  *Id.* ¶ 20.  High Tek has contracts, of which H&C is aware, that require it to obtain Ishida parts, but H&C has prevented High Tek from fulfilling its contractual obligations because H&C will not sell it Ishida parts and High Tek has cut off any alternative means to purchase such parts.  *Id.* ¶ 20.  As a result of H&C's refusal to sell Ishida parts, High Tek has been forced to breach its contracts and turn away business.  *Id.* ¶ 20.

## II.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  In the antitrust context, "a court must determine whether an antitrust claim is 'plausible' in light of basic economic principles."  *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009) (citing *Twombly*, *supra*, 550 U.S. at 556).  Although the court must construe all allegations of material fact in the light most favorable to the plaintiff, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, *supra*, 550 U.S. at 555 (alteration in original).  If the allegations in the complaint fail to give rise to a plausible claim for relief, "'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Id.* at 558 (citations omitted).

## III.  DISCUSSION

### A.  COUNT I: SECTION 1 SHERMAN ACT – CONTRACT IN RESTRAINT OF TRADE[1]

As to Count I, alleging a violation of Section 1 of the Sherman Act, High Tek fails to allege sufficiently each of the required elements of the claim.  Liability under Section 1 of the Sherman Act, 15 U.S.C. § 1, requires a "contract, combination . . ., or conspiracy, in restraint of trade or

---

[1] 15 U.S.C. § 1. Trusts, etc., in restraint of trade illegal; penalty
> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony . . .

3

commerce." *Twombly*, *supra*, 550 U.S. at 548.

To state a claim for conspiracy under Section 1 of the Sherman Act, a plaintiff must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: "'(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition.'" *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012) (quoting *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008)). "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality" for purposes of Section 1 of the Sherman Act. *Twombly*, *supra*, 550 U.S. at 567.

Here, the Complaint identifies H&C's contract with Ishida, which makes H&C the exclusive North America distributor of Ishida parts, but the Complaint does not allege that either H&C or Ishida entered into the contract for the purpose of harming or restraining commerce. Moreover, as to the third element, the Complaint alleges only the ultimate fact that "the [unspecified] way [H&C] executes those contracts in North America unreasonably restrains trade" without providing any evidentiary fact of injury to competition. *See* Complaint ¶ 25. "[T]o withstand a motion to dismiss, 'a section one claimant may not merely recite the bare legal conclusion that competition has been restrained unreasonably.'" *Brantley*, *supra*, 675 F.3d at 1198 (quoting *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507-08 (9th Cir. 1989)).

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count I **WITH LEAVE TO AMEND.**

### B.     COUNT II:  SECTION 2 SHERMAN ACT – ILLEGAL MONOPOLY[2]

As to Count II, alleging a violation of Section 2 of the Sherman Act, Plaintiff fails to plead facts regarding the relevant product market. Section 2 of the Sherman Act makes it unlawful to monopolize, attempt to monopolize, or combine or conspire to monopolize.

---

[2] 15 U.S.C. § 2. Monopolizing trade a felony; penalty
> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . .

4

To state a cause of action for the offense of monopoly under Section 2 of the Sherman Act, a plaintiff must plead:  (1) the relevant market that defendant has monopolized; (2) possession of monopoly power in that market; and (3) willful acquisition or maintenance of that power through competitively unreasonable means, rather than as a consequence of a superior product, business acumen, or historic accident.  *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).

Charges of monopolization can only be judged in the framework of the relevant market, which has two dimensions:  the "relevant geographic market" and the "relevant product market."  *Newcal Indus. v. Ion Office Solution*, 513 F.3d 1038, 1044 n.3 (9th Cir. 2008).  While the parties agree that the relevant geographic market is the United States, they differ on the scope of the "relevant product market."  In the Complaint, High Tek alleges that the relevant product market is the purchase of Ishida parts.  Complaint ¶ 29.  In its Opposition Brief, High Tek adds two additional markets: the aftermarket for refurbished Ishida scales and the aftermarket for servicing Ishida scales.  H&C argues that the relevant product market is all food processing scales sold in the United States.

High Tek alleges no facts from which it plausibly could be inferred that the relevant product market is the purchase of Ishida parts (the aftermarket for refurbished Ishida scales and/or the aftermarket for servicing Ishida scales)[3] as opposed to all food processing scales sold in the United States.  *See Brown Shoe Co. v. United States*, 370 U.S. 294, 325-26 (1962) ("The outer boundaries of a product market are determined by the reasonable interchangeability of use . . . between the product itself and the substitutes for it.").  This infirmity is fatal to its Section 2 Sherman Act claim.  *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956) ("where there are market alternatives that buyers may readily use for their purposes, illegal monopoly does not exist."); *see also Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 180 (2006) ("Interbrand competition, our opinions affirm, is the 'primary concern of antitrust law.'").

---

[3] In its Opposition Brief, High Tek attempts to explain why it believes that Ishida parts is the relevant market. For example, it argues that Ishida equipment is the "premium brand," the "gold standard" of weighing and packaging equipment, that Ishida equipment is utilized by a majority of manufacturers and distributors of packaging equipment.  Facts not alleged in the Complaint will not prevent dismissal for failure to state a claim. Without deciding whether these additional facts are sufficient to state a Section 2 Sherman Act claim, the Court will permit High Tek to amend its Complaint to allege additional facts.

5

Because High Tek has failed to show a relevant market against which H&C's market power and the alleged anticompetitive effects of its practices can be judged,[4] High Tek has failed to state a Section 2 Sherman Act claim.

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count II **WITH LEAVE TO AMEND**.

### C.   COUNT III:  VIOLATION OF THE ROBINSON-PATMAN ACT, 15 U.S.C. § 13

As to Count III for violation of the Robinson-Patman Act, High Tek fails to allege each of the required elements of the claim.  The Robinson-Patman Act of 1936, 15 U.S.C. § 13, forbids price discrimination when it is apt to have an anticompetitive effect.  To state a claim for a violation of Section 2(a) of the Robinson-Patman Act, a plaintiff must plead four elements:  (1) the relevant sales were made in interstate commerce; (2) the products sold were of the same grade and quality; (3) that H&C discriminated in price as between High Tek and another purchaser; and (4) the discrimination had a prohibited effect on competition.  *See Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 556 (1990).  The fourth factor – whether the discrimination had the prohibited effect on competition – requires, *inter alia*, allegations that the price discrimination is between purchasers in direct competition.

The Complaint alleges that "H&C required HICH TEK to pay a 10-20% markup on all Ishida parts--something other companies who were not in direct competition with H&C were not required to pay."  Complaint ¶ 15.  Thus, High Tek alleges that it was *not* in competition with the purchasers who were allegedly the beneficiaries of the price discrimination.  As such, the Complaint alleges a price *difference* but not price *discrimination*.  Accordingly, High Tek has failed to state a claim for price discrimination under the Robinson-Patman Act.

---

[4] The term "monopolize," as used in the federal antitrust laws, means the power either to obtain, or to maintain, the power to remove or exclude competitors from the field of competition in a particular business or industry. Since H&C is the exclusive distributor of Ishida parts, H&C maintains its so-called monopoly power to purchase Ishida parts because of H&C's contract with Ishida to be the exclusive North American distributor for Ishida parts, not because of any of the alleged anticompetitive behavior.  Additionally, High Tek's theory, that because it is a competitor that has been harmed, that H&C has harmed competition does not state a claim under the antitrust laws.  "[T]he plaintiff here must allege and prove harm, not just to a single competitor, but to the competitive process, *i.e.*, to competition itself."  *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998).

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count III **WITH LEAVE TO AMEND**.

### D. COUNT IV: INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

As to Counts IV and V for intentional interference with contractual relations and intentional interference with prospective economic advantage, H&C attacks the merits of the claim but does not address the sufficiency of the allegations in the Complaint. The elements for a cause of action for intentional interference with contractual relations and intentional interference with prospective economic advantage essentially are: (1) the existence of a contract *or* other economic relationship between plaintiff and a third party; (2) the defendant's knowledge of the contract *or* relationship; (3) defendant intended to disrupt the contract *or* relationship through wrongful conduct; (4) the conduct did disrupt the contract *or* relationship; and (5) defendant caused damage. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (Cal. 2003); *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (Cal. 1998); *see also*, Judicial Council of California Civil Jury Instructions (2011 Ed.) sections 2201, 2202 and the cases cited therein.

H&C argues that its decision not to sell Ishida parts to High Tek was not wrongful and was justified by competition. At oral argument, counsel for H&C argued that no wrongful act is alleged because the Complaint alleges only legitimate business activity. Counsel also argued that the business tort claims are based upon the antitrust allegation; and since the antitrust claims fail, the business tort claims necessarily fail, as well.

To say that no wrongful conduct is alleged simply ignores the allegations in the Complaint. The wrongfulness is apparent from the allegations of fact: High Tek had contracts with its customers that required it to obtain Ishida parts and H&C knowingly prevented High Tek from performing those contracts by refusing to sell Ishida parts and cutting off access to alternate sources from third parties by threatening to terminate their parts account if they deal with High Tek. Complaint ¶ 20. No additional pleading of wrongfulness is required. Additionally, not every business tort violates federal antitrust law. Thus, a failure to state a Sherman Act violation does not necessitate dismissal of the business tort claims.

As to H&C's argument that its acts were justified by reasonable notions of competition, no such "competition" justification appears on the face of the Complaint.[5]  H&C may assert, as an affirmative defense, that its actions were in fact justified (by competition or otherwise) in its Answer.[6]  However, without facts in the Complaint alleging that H&C's allegedly tortious acts were motivated by competition, the defense of justification is not a basis to dismiss the Complaint.

Accordingly, the Court concludes that H&C has failed to identify a pleading defect in High Tek's intentional interference claims.[7]

Based on the foregoing analysis, the Court **DENIES** the Motion to Dismiss Counts IV and V.

E.  **COUNT VI:  PROMISSORY ESTOPPEL**

As to Count VI, High Tek fails to state a claim for promissory estoppel because the Complaint alleges that H&C performed the very promise the High Tek seeks to enforce.  The elements for a claim of promissory estoppel are: "'(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.'"  *People v. Castillo*, 49 Cal. 4th 145, 156 n.10

---

[5] H&C relies on the Restatement of Torts to insinuate that it may interfere with High Tek's contracts with impunity so long as the contracts are terminable at-will.  *See* H&C's Br. 17 ("because [the Complaint] concerns a matter involving competition between High Tek and H&C, High Tek has no [tortious interference] claim as to its [at-will] contracts").  The Restatement provides that competition does not justify inducing breach of contract where the contract is not terminable at-will.  *See* Restatement (Second) of Torts § 768, comm. subs. 2 (1979).  This does not mean, as Defendant appears to argue, that interference with an at-will contract is always justified by competition.  *See* H&C's Br. 17.

The "competition as justification" defense rests solely on the notion that when a contract is terminable at-will, there is only an expectancy of a continuing contractual relationship and therefore, the termination of contractual relations interferes with future relations for which the plaintiff has no legal assurance.  Thus, a defendant may plead, as an affirmative defense, that competition justified its acts in inducing breach.  On the other hand, when the contract is not terminable at-will, there is greater definiteness of the legal relationship and the defendant is not justified by the mere fact of competition to induce a breach.  Accordingly, competition is not a defense to an intentional interference claim where the contract is for a specific term.

[6] Notably, the first line of the opinion on which Defendant itself relied at oral argument (and which is cited in its briefs) provides that:  "The *competition privilege is an affirmative defense* to the tort of interference with prospective economic advantage."  *San Francisco Design Ctr. Associates v. Portman Companies*, 41 Cal. App. 4th 29 (Cal. Ct. App. 1995) (emphasis added.)

[7] In its Reply brief H&C raises the issue that High Tek has not sufficiently specified the parties with whose relationships H&C has interfered.  Reply Br. 13.  The Court will not consider an argument raised for the first time in a reply memorandum because Plaintiff did not have an opportunity to address this issue.

8

(Cal. 2010) (quoting *City of Goleta v. Superior Court*, 40 Cal. 4th 270, 279 (Cal. 2006)). If the promise sought to be enforced was performed, then the doctrine is inapplicable. *Money Store Inv. Corp. v. S. California Bank*, 98 Cal. App. 4th 722, 732 (Cal. Ct. App. 2002) ("A cause of action for promissory estoppel would be superfluous"). Moreover, because promissory estoppel is an equitable doctrine that provides a substitute for consideration to enforce a promise, if the only claimed reliance is performance of the act bargained for, the doctrine is inapplicable. *See Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 275 (Cal. Ct. App. 2011).

The Complaint alleges that prior to entering into a parts account, H&C required that High Tek remove language from its catalog that stated something to the effect of "High Tek is the best in the industry." Complaint ¶ 14. High Tek alleges that it detrimentally relied upon this promise of a long-term parts account, and made the requested change to its catalog. H&C provided High Tek with a parts account to purchase Ishida parts from early 2007 until December 20, 2011. *Id.* ¶¶ 14-16.

Either adequate consideration was given here, *i.e.*, H&C promised a long-term parts account if High Tek removed certain language from its catalog, or it was rendered moot by H&C's performance of its obligations under the agreement, *i.e.*, H&C granted High Tek a parts account and provided High Tek with Ishida parts for four over years. To the extent that High Tek believes that it was entitled to a longer term contract, to be valid under California law, an agreement not to be performed within a year must be reduced to writing. *See* Cal. Civ. Code § 1624(a)(1) (statute of frauds).

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count VI **WITH LEAVE TO AMEND**.

### F. COUNT VII: UNFAIR, UNLAWFUL AND FRAUDULENT BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 *et seq.*

As to Count VII, for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code. § 17200, High Tek claims are based upon its federal antitrust claims. California's UCL statute prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. Prof. Code. § 17200; *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999). Because High Tek simply borrows from its federal antitrust claims, and because High Tek has failed

to adequately plead its antitrust claims, its UCL claim necessarily fails as well.  *See Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (Cal. Ct. App. 2005).

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count VII **WITH LEAVE TO AMEND**.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.**  Counts I, II, III, VI, and VII are **DISMISSED WITH LEAVE TO AMEND**.

Plaintiff shall have until **August 3, 2012** to file an amended complaint.

This Order Terminates Docket Number 14.

**IT IS SO ORDERED**.

Date: July 18, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**